E-FILED
Wednesday, 14 October, 2015  03:16:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN STEWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-CV-4099 |
| | ) | |
| STEVE DREDGE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW OPINION**

Plaintiff, proceeding pro se and detained in the Rushville

Treatment and Detention Center, seeks leave to proceed in forma

pauperis.

The "privilege to proceed without posting security for costs and

fees is reserved to the many truly impoverished litigants who,

within the District Court's sound discretion, would remain without

legal remedy if such privilege were not afforded to them."  Brewster

v. North Am. Van Lines, Inc., 461 F.2d 649, 651 (7th Cir. 1972).

Additionally, a court must dismiss cases proceeding in forma

pauperis "at any time" if the action is frivolous, malicious, or fails to

state a claim, even if part of the filing fee has been paid.  28 U.S.C.

§ 1915(d)(2).  Accordingly, this Court grants leave to proceed in forma pauperis only if the complaint states a federal claim.

In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. Turley v. Rednour, 729 F.3d 645, 649 (7th Cir. 2013).  However, conclusory statements and labels are insufficient.  Enough facts must be provided to "'state a claim for relief that is plausible on its face.'"  Alexander v. U.S., 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

## ALLEGATIONS

Plaintiff practices the Muslim faith, which requires daily community prayer.  The facility permits only weekly gatherings for prayer, which are allegedly cancelled arbitrarily at times by Defendant Billingsley (the religious coordinator) and other personnel.

Plaintiff's faith prohibits him from eating any pork or pork products or from coming into contact with anything that has touched pork or pork products.  For example, Plaintiff's faith prohibits his food from being fried in grease that has been contaminated with pork or pork product.  His food needs to be

2

prepared with utensils and cookware that is kept separate from the utensils and cookware which touch pork.  Additionally, Plaintiff's meat must be slaughtered in a specific way like kosher foods for those of the Jewish faith.

Defendant Dredge and the other kitchen supervisors allegedly refuse to follow these practices, interfering with Plaintiff's ability to adhere to his religious diet.  Plaintiff has informed Director Scott, Assistant Director Kunkel, and Officer Billingsley to no avail.

Defendants have also restricted Plaintiff's ability to adhere to the annual Ramadan, which lasts about one month and requires praying communally five times per day, fasting from sunrise to sunset, and feasting for three days at the conclusion of Ramadan. The facility does not allow daily communal prayers and allows only one day of feasting at the end of Ramadan.

The Ramadan feast in August of 2013 was cut short, and Defendant Billingsley refused to allow the Ramadan celebrants to take their left-overs from the feast to share with others, as their faith allegedly requires.  The residents had been allowed to take the left-overs to their units at prior Ramadan feasts.   The residents began to protest and one resident refused Billingsley's instruction

3

to leave, whereupon Billingsley called for assistance.  When the
situation began to further deteriorate, Plaintiff stepped in and
brokered a solution with Officer Clayton and Defendant Bierman.
As a result, the residents were permitted to finish their allotted time
for celebration and to take left over food back to their rooms.
Clayton, however, informed Plaintiff that everyone would be
receiving disciplinary reports for insolence.

That evening, Sergeant Kulhan and Captain Parsons escorted
Plaintiff to an allegedly filthy segregation cell where Plaintiff stayed
for five days, purportedly on the charge of creating a disturbance.
For over six hours, Plaintiff had no mattress, blanket, pillow, or
snacks, even though Plaintiff is diabetic and he felt light-headed.
During the entire five days, Plaintiff was not allowed any toilet
paper, prayer rug, Quran, phone calls, recreation, communication,
writing materials, shower, hygiene items, or legal documents.

At Plaintiff's disciplinary hearing on the charge, behavioral
committee members included persons who had been involved in the
incident.  Plaintiff was not allowed to call any witnesses, and he was
found guilty and punished with 5 days on "close" status.  Close
status meant a continuation of the deprivations he had been

4

experiencing and also having to wear a "black box" on transports outside the facility.  Plaintiff had a doctor's order prohibiting the use of the black box, but he was required to wear it anyway. Wearing the black box on a transport to Cook County caused substantial pain, swelling and numbness in Plaintiff's hands, wrists, and arms.  Plaintiff was also unable to eat with the black box on, which made him sick due to his diabetes.  Additionally, no restroom stops were made.  Instead, Plaintiff had to urinate publicly in a "piss bottle" shared by all the residents.

## ANALYSIS

Plaintiff has a First Amendment right to reasonable opportunities to practice his religion, subject to the legitimate interests of the facility.  *See*  Maddox v. Love, 655 F.3d 709 (7th Cir. 2011); Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009).  The Religious Land Use and Institutionalized Persons Act (RLUIPA) also protects an inmate's right to practice his religion, forbidding a substantial burden on that exercise unless the burden furthers a compelling government interest and is the least restrictive means of achieving that interest.  42 U.S.C. § 2000cc-1(a).  Only injunctive relief is available under RLUIPA, not damages.  Grayson v. Schuler,

666 F.3d 450, 451 (7th Cir. 2012)(RLUIPA does not create a cause of action against state employees in their personal capacity, but injunctive relief is available).

Plaintiff states an arguable claim for injunctive relief under RLUIPA.  He alleges that his ability to follow his religious tenets have been obstructed or hampered by Defendants, and he seeks an injunction to allow him to fully practice his religion.  Whether the facility's rules and practices are the least restrictive way to achieve a compelling governmental interest cannot be determined without a fully developed factual record.  *See* <u>Schlemm v. Wall</u>, 784 F.3d 362 (7th Cir. 2015)(RLUIPA "'requires the [prison] not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest.'")(quoting <u>Holt v. Gobbs</u>, 135 S.Ct. 853, 864 (2015)).  For the same reasons, Plaintiff states a claim under the First Amendment for the violation of his right to practice his religion.  A more developed record may show a legitimate reason for the restrictions, but that determination would be premature.

A procedural due process claim cannot be ruled out at this point, based on Plaintiff's placement in what is described as a

6

segregation cell without an opportunity to call witnesses in his

defense or have unbiased decision makers.  *See* <u>Wolff v. McDonnell</u>,

418 U.S. 539, 563–64 (1974)(procedural due process includes an

opportunity to submit evidence and impartial decision makers);

<u>Higgs v. Carver</u>, 286 F.3d 437, 438 (7th Cir. 2002)(pretrial detainee

cannot be placed in segregation without notice and an opportunity

to be heard, unless placement was for non-punitive reasons).

Plaintiff may also state a claim that the conditions he experienced

in segregation were inhumane, in light of his allegations of no toilet

paper, no shower, no hygiene products, and a filthy cell.  The Court

also cannot rule out a claim that the application of the black box to

Plaintiff in light of his medical condition states a claim for deliberate

indifference to his serious medical needs, though what these

Defendants knew about the alleged medical prohibition on the black

box for Plaintiff is unclear.

**IT IS ORDERED:**

1.      Plaintiff's petition to proceed in forma pauperis is granted

(3).  Pursuant to a review of the Complaint, the Court finds that

Plaintiff states the following federal constitutional claims:  First

Amendment and RLUIPA claims based on the violation of Plaintiff's

right to practice his religion; procedural due process claim based on

Plaintiff's placement in segregation without an opportunity to call

witnesses and have unbiased decision makers; Fourteenth

Amendment due process claim based on the alleged inhumane

conditions in segregation; and, Fourteenth Amendment due process

claim based on deliberate indifference to Plaintiff's serious medical

need to avoid use of the black box.  This case proceeds solely on the

claims identified in this paragraph.   Any additional claims shall not

be included in the case, except at the Court's discretion on motion

by a party for good cause shown or pursuant to Federal Rule of

Civil Procedure 15.

2.    This case is now in the process of service.  Plaintiff is

advised to wait until counsel has appeared for Defendants before

filing any motions, in order to give Defendants notice and an

opportunity to respond to those motions.  Motions filed before

Defendants' counsel has filed an appearance will generally be

denied as premature.  Plaintiff need not submit any evidence to the

Court at this time, unless otherwise directed by the Court.

3.    The Court will attempt service on Defendants by sending

each Defendant a waiver of service.  Defendants have 60 days from

the date the waiver of service is sent to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After counsel has appeared for Defendants, the Court will enter a scheduling order setting deadlines for discovery and dispositive motions.

4.     With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5.     Defendants shall file an answer within 60 days of the day the waiver of service is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Opinion.

6.     Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7.     Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8.      Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9.     If a Defendant fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal's service on that Defendant and will require that Defendant

10

to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

10. **The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

11. **The Clerk is directed to attempt service on Defendants pursuant to the standard procedures.**

ENTERED:   10/14/2015

FOR THE COURT:

**s/James E. Shadid**
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE

11